Robert M. Lee v. Michael Corsini Good morning. May I please reserve one minute of time for rebuttal? Yes. May it please the Court, my name is Mary Rogers and I represent Robert Lee. Mr. Lee has always maintained his innocence. This is a case of ineffective assistance of counsel. There was no eyewitness identification. The Commonwealth's case rested on one witness. That was the co-defendant. Her name is Janet Brady and she was not impeached with her plea bargain. That by testifying, she was saving not only herself but her son and friends, friends of the son, from a life sentence without the possibility of parole. She was not impeached with that. My second point about ineffective assistance of counsel is one of the friends of the son who at a meeting over the Green Meadow Lodge drinks with Mrs. Brady and her son and the friend chatted about having difficulty trying to kill her live-in lover. At that point, two days before, they piped up and said, we'll do it for free. Mr. Keehoff said we'd do it for less than $2,500. The defense attorney, not the prosecutor, called Mr. Keehoff to the stand and he said to him, and I believe it's on page 11 of my brief, the colloquy of the question and answer, he said to him, you and the other two men, you weren't serious when you made that statement. The witness adopted that. And then we get to the alibi. Counsel, you have a very limited amount of time. You seem to be trying to devote it to the merits. But this case is not here on the merits. It's here because Judge Wolf determined that there was an independent and adequate state ground that barred merits review. That's the decision that you've got to confront. If you convince us, Judge Wolf, then the case will go back to the district court for the merits to be considered. But either way, we're not going to reach the merits. So you'd better devote your time, I would think, to explaining why Judge Wolf, who relied on our decision in Costa against Hall, was wrong in declaring that an overruled. As to the Commonwealth claiming that Costa blocked habeas review, I submit strongly that Phoenix has not been overruled. Phoenix v. Montana is alive and well. The single justice ruled that it was arguably new, but not substantial. And in doing so, on the substantial part, he reached the federal merits of the claim. It was not Excuse me, but Costa says that substantiality in a Section 33e review by a single justice, that newness or substantiality doesn't make any difference. Either one is an independent and adequate state ground. Now, I agree with you that that appears to conflict with our earlier decision in Phoenix v. Madison. But what do we do when we're faced with a conflict in our cases and the latest one appears to hold that substantiality is an independent and adequate state ground? Well, respectfully, I request that this Court clarify that I point the Court specifically in Costa to footnote number five. The statement that substantiality in and of itself could bar review was dicta. In Costa, what happened was the claim was not new nor substantial. And it was based on an ineffective assistance of counsel argument. And it was being reframed. The issues before were being reframed. So it was in the context of that that that statement was made. But in footnote number five, Costa refers to previous case law, including Mendez, that also followed Phoenix. And so it was never overruled en banc. It's never gone to the full Court. And it really has to be considered just in the confines of that case. It has to be independent and adequate procedural grounds that reach the federal merits. There was no clear and express statement that it was being defaulted on by the state. Now, if I may, if there's not questions on that, move to cause and prejudice? Sure. Okay. There's a case of first impression here before you. And that is the application of Trevino v. Thaler, a brand-new case from the Supreme Court. And what you have to do in that case is look to the state procedural framework. In this case, that is Massachusetts. And I point the Court primarily to the case Commonwealth v. Zinsser. And the Zinsser principle says that the SJC goes through a number of cases, and Zinsser applies to first-degree murder cases as well, that they don't want to see an effective assistance of counsel at first time in a direct appeal. Rather, it should be brought post-appeal. And also, Massachusetts, there is no right to counsel, even in first-degree murder cases. It's in the discretion of the judge at the trial level. And just because there's plenary review in first-degree murder cases under 27833E, that doesn't change anything. The defendant still has the right to respond to federal merits. And also, as here, there's a claim of ineffective assistance of counsel as to direct appellate review. That cannot be brought on direct appeal. Let me ask you a threshold question. Normally, we review district court decisions on particular points. The district court here never reached the question of cause and prejudice because of its finding about the adequate and independent state procedural ground. Should we, if we disagree with the district court on that issue, should we go on to cause and prejudice ourselves, or would orderly procedure suggest that we should remand that so that that could be considered in the first instance in the trial court? No, that's an issue that this court should decide. The district court said there was no cause and prejudice. And what Trevino deals with, it gets the petitioner back to trial counsel so that if there is a procedural default as to trial counsel, and I will make the concision as to trial counsel, there was procedural default, then this court definitely should review and decide a case of first impression for Massachusetts under Trevino versus Thaler. And it gets back to ineffective assistance of trial counsel. The next reason for cause and prejudice is that the government has impeded my ability to present the case. They have refused to provide the police reports, which they admit they have, and the ballistic reports and other documents. They claim that because it was turned over 37 years ago, never has to be given to the petitioner again. That's not something that this court should condone. I do think that this court should rule on the merits of ineffective assistance of counsel. This case is 37 years old. It sat in state court for 10 years with the appointment of counsel having been granted but never appointed. It sat on the district court judge's desk for six and a half years with no discovery provided, no evidentiary hearing. My client is 77. I think it's time that the merits are reached. There's no reason why this court can't do it. I could ask for finally getting those police reports. I want them. It's wrong. It's unfair. It's unjust. But all the same, I have made the case that he is entitled to habeas review, and I don't think this court should go send it back to district court, whichever side succeeds, come back here. Frankly, my client might be dead. Unless I'm missing some case law, which I'd be more than happy to respond to, I don't know of any reason why this court can't reach the merits of it. Judge Wolf decided this case orally, as I understand it, in 2009, but issued a written opinion in 2014. Am I correct on that? Was there ever an oral decision? At least I thought that that's something that I read. I'm sorry, I'm misunderstanding what it is you're asking. You were talking about the length of time which has occurred in this case, and I have to agree with you it's been a very long time between actions. Judge Wolf, did he issue an oral decision in the middle of this period? Which judge? Judge Wolf, the district judge. Oh, he issued a ruling that he did not believe that I was entitled to discovery. He allowed me to submit additional memorandum on that, and he told the Commonwealth to file a motion to dismiss it, and then that I could respond to that motion. So the issue of discovery was heard, but I was not granted any discovery, nor an evidentiary hearing. So the first opinion was the 2014 opinion on the merits? What does 2014 mean? 2014. Oh, yes, that was the first decision having anything to do with the merits, yes. Okay, thank you. You've reserved anyway. Okay. Good morning, Your Honors. May it please the Court Assistant Attorney General Ann Thomas for responding? I'd just like to start with asking you, why wouldn't you give her this information that she's requested? Well, my understanding is that the Worcester District Attorney's Office at the time when they started the habeas turned over everything it had. So whether these reports still exist or not, it's purely speculative on my sister's part as to what report she's talking about, what ballistic reports, anything. Well, you relied on a ballistics report as the keystone of the case. Yes. That's what tied the defendant to the murder, basically. If there is no ballistics report remaining, it would be easy to say we don't have it. But she says that you do have it, and she's requested it, and they haven't given it to her, and I just wonder why. I'm sorry, Your Honor, but we did take exception to that in the district court, that that was true, that we had these and were not turning them over. The other thing, too, is in state law, she didn't make the showing she needed to make. This was purely a fishing expedition. So as far as requiring all this additional, again, Your Honor, she didn't meet any burdens. The other thing, too, is that it is established by the record, my sister disputes it, that trial counsel did have all of these documents that she's stating, because in the transcript, and I can cite to those pages, before trial, the judge goes through all of the discovery motions, and the prosecutor explains how he turned over this or that, and defense counsel agrees. Specifically, prosecutor said, if you remember, I opened my entire file. You came over and you reviewed my entire file and copied whatever you wanted. So there was no dispute, and that includes the statement regarding that Mrs. Brady said when she was visiting with the victim, that it could have been my ex-husband who did this, and the victim responds, yes, it could have been. Trial counsel did know about that prior to the trial beginning. I can discuss more about the evidence, but as far as the single justice, the gatekeeper's ruling, that it was arguably new and not substantial, several points. First, arguably new is not a determination that the issue was new. To be new, as far as a gatekeeper is concerned, is when it could have been addressed had defendant properly raised it at trial or on review. I'm sorry, that's when it's not new. But arguably new is not the same thing as saying not new, which would have constituted an independent and adequate state ground. So your claim of an independent and adequate state ground must rest on the trial justice's statement that the claim wasn't substantial. And that does seem, forget the prior precedents for a minute, that seems as though that would require a merits inquiry to determine substantiality. No, it doesn't, Your Honor, because substantiality is not a review of the merits as far as under whether it was a preserved error in Massachusetts or whether it was unpreserved and so substantial risk. Sustantiality review offers some, the judge considers, whether there's some reasonable possibility of a successful decision in the appeal. And also, as this Court noted in Costa and Mendez, a single justice does not have the authority to reach the merits of an appeal. He is simply the gatekeeper to decide whether after plenary review and an opportunity to file a motion for new trial prior to the direct appeal concluding, the defendant has raised a new and substantial issue that's worthy of the review of the SJC. But if that's so, what do we do with our prior decisions in Jewett and Phoenix? Where we've said pretty clearly that when a claim is rejected by the single justice as not sufficiently substantial under 33E, that that's a merits determination, not an independent and adequate state procedural ground. Well, Phoenix specifically, Your Honor, this Court stated that under these special circumstances, the case was not procedurally defaulted. And there, because the single justice specifically stated that he was not dismissing the ineffective assistance of counsel claim on the ground of a lack of novelty or on any other theory of waiver. Now, on our position, we think the single justice was incorrect in doing that because he didn't have the authority. But this Court, in relying on his ruling, found that the claim was not procedurally defaulted. But how about the 2011 case, the Jewett opinion? In Jewett, that specific case was where the single justice stated in one sentence that he denied the petition, the gatekeeper petition, for the reasons stated in the Commonwealth's opposition to the petition. And in the Commonwealth's opposition, it dealt both with default and with the merits. And so this Court held that it couldn't decipher what the single justice relied on. So in that case, they actually bypassed the procedural default claim because it's not jurisdictional and that it was easier to review petitioner's claims on the merits because they were of no merit. The other thing, too, is in Costa, in footnote 4, this Court acknowledged that an ineffective assistance of appellate counsel claim merely reiterated the same substantive claims asserted against the trial counsel and stated that, under those circumstances, this is not a new claim. And that's exactly what happened here. No, but in Costa, I simply can't remember. What did the single justice say about the substantiality prong that would suggest to us that that was not a merits determination? Anything? Let me see. Well, in Costa, it was that he failed to present a new and substantial issue. And then because the court, the gatekeeper, in discussing what the trial judge had found, noted that the trial judge found waiver on all these issues. And, again, so his substantiality review. So that's how we do it. Okay, that's how you read that. So you read that as consistent with the prior opinions. Exactly. And, again, as far as the development of this law through Phoenix and these other cases, it seems to be that it originally started with Simpson where the court said it's adequate and independent where there was procedural waiver below. And so that seems to be how it developed here. If you have no more questions on that point. As far as cause being established by Martinez, Martinez and Trevino do not apply in Massachusetts. Very limited exception to the Coleman rule that ineffective assistance at counsel, garden variety, should I say, cannot establish cause to excuse procedural default. In Martinez, the Arizona law actually does not allow for a defendant to bring an ineffective assistance at counsel claim prior to the direct appeal concluding. And in Trevino, the court found, again, this very narrow. Because in Trevino under Texas law, even though it doesn't state that you can't bring one, in effect, based on the rest of the rules and funding decisions and all that, makes it impossible for a defendant to do so. Where in Massachusetts, we actually have the opposite. Under 33E review, it's encouraged and the SJC itself can conduct the evidentiary hearing and decide on the motion for new trial or it can remand it to the trial court to do that and then review the decision on the motion for new trial, the denial, we assume, together with the direct appeal. So, and as far as any other cause, respondent has not shown cause to excuse the procedural default. If I can point out, too, the only issue before the court is the procedural default of the ineffective assistance of appellate counsel claim. The ineffective assistance of trial counsel and prosecutorial misconduct claims were denied by the single justice as not new and not substantial. And my sister counsel does not dispute that in her brief to this court, that that was a finding of procedural default. So as far as ineffective assistance of appellate counsel claim, again, because the trial judge reviewed these claims, again, finding waiver first, that there was no merit to any of the claims regarding trial counsel, there cannot be any merit to the ineffective assistance of appellate counsel claim. And it, too, cannot be used to establish cause. It has to be separate. I don't know if Your Honors wanted me to discuss anything on the merits. Yes. Answer this for me, if you would. If we get past all the procedural stuff, given the concerns about trial counsel, concerns about subsequent counsel, concerns about the expert in quotes, concerns about the inability to get information from the Commonwealth, the fact that the case, that my word, not anyone else's, languished in the Federal District Court for so long, should we be concerned about this case on the merits? No. And if not, why not? Not at all, Your Honor. Because of the claims that were made, again, both in state court and in district court on the motions for discovery, they're purely speculative claims. Sister doesn't cite to anything that any of this evidence would prove or is likely to prove that deprived him of an otherwise available defense. The two most, and the two my sister mentioned, seem to be most troublesome is the idea that trial counsel did not impeach Mrs. Brady, who hired Mr. Lee to kill her boyfriend. Am I correct that he did not examine on the plea deal that she had made? He did not. And if Your Honors, reading the transcripts to prepare for today, I especially reviewed his closing. And the closing is at volume 8, 1047 to 1073. And that shows the strategy. This was a purely strategic decision that was not unreasonable when made. Counsel was, his whole defense was that this woman was not credible. And I did particularly like the last line where he said that the reason Mrs. Brady wanted her live-in boyfriend killed was because he was leaving her and he had been with other women and he was leaving her. And so defense counsel, the point was, you see what she does when she's rejected. She hires someone to kill her boyfriend, and the defendant testified that he had rejected an advance she made on him. And so there we know now that she's making this allegation against Mr. Lee for that reason. And also to take any suggestion that her son or his friends might have done it. That, too, was for the same purpose. Her whole point was that she's not credible. And if she was credible, she wouldn't have made this joke around her son. So the whole point was she wasn't credible. So to then cross-examine her, which is definitely multiple Massachusetts cases have recognized that the government on her plea deal would be, in essence, saying that the government believed her story. Another very important part is her statement that she gave to the police the day after the murder, prior to the defendant being arrested, was consistent with her testimony at trial. So there's no evidence that she changed her story to implicate the defendant. What about the ballistics question? Yes. We all know that ballistics now has come under a great deal of criticism. In this case, it would seem to me since it was the ballistics which tied this  that getting a good ballistics expert in advance of trial, reviewing the evidence in advance of trial, would have been a proper strategy. And that wasn't done here. As I understand, at least from the record, he picked this fellow up at the last minute and he basically agreed pretty much with the state's ballistics expert. What he agreed with was that the two bullets, well, I should say, the one spent shell outside the house could have come from the defendant's shotgun. But what he disagreed with is that anyone could tell that the pellets that were in the victim's body were number eight shot, which is the same that the defendant used. And that also the defense was that someone planted that shell there because the defendant who regularly practiced shot at this beach and there were all these spent shells. And so the defense was that it was hard to refute the Commonwealth's evidence to experts testifying that it was consistent with coming from his gun. And the gentleman who apparently had the shotgun at the time, there was testimony that the defendant picked it up the day of the murder and then there was other defense testimony. He picked it up the day after. The man he picked it up from is the man where he used to shoot at his beach. So again, Your Honor, the defendant, it wasn't these claims that the ballistics expert was somehow ineffective really is not supported by the record. And also I know I addressed Hinton, even though Hinton was not established Supreme Court law at the time that this SJC decided this case or single justice. In Hinton the big difference was that the defense counsel made an error of law. He thought that he had used up his funding such that he couldn't replace the expert he knew to be inadequate based on an error of law. And Hinton especially said that we don't want to turn appellate courts into a review of the experts because, again, strategic decision at trial time. Thank you. May I please record again? There's a lot I'd like to respond to. I left time before. If there's any chance I can go a little over, I'd be grateful. I think it was over three minutes I left. You have one minute. Okay. Let me get to it. First, I know for sure that the Commonwealth has the police reports. The first time I requested them, the chief of appeals in Worcester District Attorney's Office told me he went and got the file and they have them. The problem is that chief left that office. A new chief came in and ever since then I've not been able to get them. I filed series after series as time went on of all the efforts I made to try to get them. Briefly, Worcester District Attorney, Sterling Police, State Police, Assistant Attorney General, about five of them, a state agency. We know they exist. The state police have them. Page 17 of the Commonwealth's brief, she admits none of the claims I raised have been raised before. So that distinguishes it from Phoenix and Costa. I didn't touch upon the alibi that's spelled out in my brief as to the new case Hinton and the ballistics. What my real claim is before he chose a theory, he didn't investigate it and he put on an incompetent defense expert and I point you to two affidavits from highly qualified firearms experts that I submitted by affidavit in the state court and federal court. I just asked that this court not send it back. I asked the court rule on the merits. I wrote a common procedural default as to trial counsel through Trevino and through the Commonwealth's obstructed actions. I do concede as to trial counsel procedural default but not as to appellate counsel. I thank you very much. Thank you.